FILED
United States Court of Appeals
Tenth Circuit

February 18, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CITIFINANCIAL MORTGAGE
COMPANY, INC.,

      Plaintiff-Counter-Defendant-
Appellee,

v.

KAREN FRASURE, an individual;
ALBERT FLEMING, an individual,

      Defendants-Counter-Claimants-
Appellants.

No. 08-5068
(D.C. No. 4:06-CV-00160-TCK-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

After a bench trial, the district court entered judgment in favor of plaintiff

CitiFinancial Mortgage Co., Inc. (CitiFinancial), on its breach of contract claims

regarding three loans taken by appellants Karen Frasure and Albert Fleming. The

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court also entered judgment in favor of Ms. Frasure on her counterclaims for intentional infliction of emotional distress and trespass. Appellants have taken this pro se appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. Background

The parties are familiar with the background of this case, so we only summarize the relevant facts, taken largely from the district court's Amended Findings of Fact and Conclusions of Law, filed May 3, 2008 (Amended Decision). In December 1998 and January 1999, CitiFinancial's predecessor in interest, Associates Financial Services Company of Oklahoma, Inc. (Associates), provided three loans to Mr. Fleming totaling $159,776.17, which the parties refer to as Loan 1, Loan 2, and Loan 3. Mr. Fleming took the loans primarily for Ms. Frasure's benefit because she could not obtain the loans on her own. She did, however, co-sign for each loan as a borrower, told Mr. Fleming that she would make the monthly payments, and took sole responsibility for communications with Associates and CitiFinancial.

Loan 1 was for $12,332.09, and Ms. Frasure gave Associates a mortgage on property she owned in Kellyville, Oklahoma. Loan 2 was for $15,094.93 and was secured by liens on two automobiles Ms. Frasure owned and one that Mr. Fleming owned. Loan 3 was for $132,349.15. As security for Loan 3, Ms. Frasure gave Associates a mortgage on a house she owned in Bristow, Oklahoma. She used the proceeds of Loan 3 to pay off an existing $81,640 mortgage on the Bristow house

-2-

and to put a $21,000 down payment on a new house she purchased in Broken

Arrow, Oklahoma, which she used as her residence. She financed the rest of the

purchase price of the Broken Arrow house through another lender. She deeded

the Bristow house to Mr. Fleming, and the two agreed that Ms. Frasure would be

in charge of renting out that house and that the rents would be used to make the

payments on Loan 3.

When appellants fell behind on their loan payments in 1999, Associates

and, later, CitiFinancial, began more than two years of mistaken threats to

foreclose on the Broken Arrow house, in which they had no security interest. The

district court described those foreclosure efforts as "conduct [that] went well

beyond insults, indignities, or annoyances that a reasonable debtor might be

expected to endure." R., doc. 207, at 7, ¶ 26.

As appellants remained in default on the loans, CitiFinancial eventually

filed this diversity action for breach of contract under Oklahoma law, seeking to

recover the outstanding principal, interest, and fees on the loans. Appellants

brought a number of counterclaims and represented themselves throughout the

litigation. On August 17, 2007, the district court entered an Opinion and Order

on CitiFinancial's motions for summary judgment (Summary Judgment Order).

The Summary Judgment Order adjudicated several issues but left a number of

claims and counterclaims for trial: CitiFinancial's claims for breach of contract;

Ms. Frasure's claims for intentional infliction of emotional distress (IIED), trespass, and conversion; and Mr. Fleming's claim for conversion.

After a bench trial, the district court filed its Amended Decision, determining that CitiFinancial had proven the terms of the loans and that appellants had not repaid the amounts they borrowed. The court found that at trial, CitiFinancial had abandoned its pursuit of interest, late fees, and penalties on the three loans, *id.* at 5, ¶ 18, and sought "only the principal amounts borrowed less all payments made or alleged to have been made," *id.* at 11, ¶ 3. Based on account payment histories and the testimony of CitiFinancial's custodian of records, Joseph Barbone, the court determined that CitiFinancial was seeking $154,225.57, *id.*, and the court entered judgment in favor of CitiFinancial in that amount. This was about $120,000 less than CitiFinancial had sought at the summary judgment stage. *Id.* at 5, ¶ 18. The court ruled in favor of Ms. Frasure on her IIED claim and awarded her $50,000 in compensatory damages and $50,000 in punitive damages. The court also ruled in Ms. Frasure's favor on her trespass claim, but concluded that she was not entitled to any additional damages. Neither appellant prevailed on the conversion claim. Offsetting the two awards, the court concluded that Ms. Frasure and Mr. Fleming were jointly and severally liable for $54,225.57, and that Mr. Fleming was solely liable for the remaining $100,000. Appellants filed a timely notice of appeal from the district court's April 21, 2008, judgment.

-4-

## II. Discussion

We have had some difficulty identifying discrete, relevant issues in appellants' pro se opening brief, which consists primarily of a rambling narrative advancing their view of the facts. While we construe a pro se litigant's pleadings and other papers liberally, holding them to a lesser standard than papers prepared by an attorney, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), this rule has limits. Pro se litigants must "follow the same rules of procedure that govern other litigants." *Id.* This requires, among other things, that a pro se litigant's appellate brief must contain "a statement of the issues presented for review," "a statement of facts relevant to the issues submitted for review with appropriate references to the record," and "the argument, which must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(5), (a)(7), (a)(9). Appellants have not provided a statement of the issues presented for review, and as we explain, they have largely failed to meet the other requirements of Rule 28(a). Further,

> although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.

*Garrett*, 425 F.3d at 840 (quotation, citation, and alterations omitted).

Against these general principles of pro se litigation, we turn to the task of identifying issues in appellants' opening brief. First, appellants contend that their pro se status merits special treatment amounting to either (1) a retrial, perhaps before a jury; (2) de novo factual review by this court; or (3) the application, by this court or the district court, of some "other laws that could have been in [appellants'] favor." *See* Aplt. Br. at 17. These requests are beyond the bounds of the leniency to which pro se litigants are entitled. First, "[o]ne who elects to proceed in a trial court, *pro se*, does so at his own peril." *United States v. Blackwood*, 582 F.2d 1244, 1246 (10th Cir. 1978). The trial transcript reveals that the district judge patiently explained trial procedures to appellants, including the need for them to admit exhibits into evidence in support of their case and the opportunity to lodge objections to the admission of evidence, and extended to them every opportunity to get their case properly before the court. Nothing more was required. Thus, appellants cannot now be heard to complain that they misunderstood the requirements of trial or "did not get to put on half of their evidence." Aplt. Br. at 17. We therefore reject their implied request for a new trial before the district court. And because they never demanded a jury trial, they waived that right. *See* Fed. R. Civ. P. 38(d).

Second, because this case was tried without a jury, "we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1274 (10th Cir. 2001);

*see also See* Fed. R. Civ. P. 52(a)(6) (setting forth "clearly erroneous" standard for review of factual findings). It is not the role of an appellate court to retry the facts. *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 411 (10th Cir. 1984). Thus, to the extent appellants' invitation to "make a better call of judgment" is a request for us to apply a less deferential standard of review to the district court's factual findings, Aplt. Br. at 17, we refuse it.

Third, it is not the court's role to construct legal theories for pro se litigants. *Garrett*, 425 F.3d at 840. Consequently, we will not conjure up some "other laws" that might assist appellants' case, Aplt. Br. at 17, nor was the district court obligated to do so.

We next address appellants' statements that Ms. Frasure is not listed as a borrower in the body of Loan 1 or Loan 3 and that she did not co-sign those loan agreements. *See id.* at 6, 10, 15. But in its Summary Judgment Order, the district court concluded that by virtue of a contrary position she took in state-court litigation, Ms. Frasure was judicially estopped from claiming that she did not co-sign any of the loans. *See* R., Vol. V, doc. 117, at 24-26. She has not mounted any challenge to that legal conclusion.

Appellants also argue that there is an ambiguity regarding the terms of Loan 1 and Loan 3. *See* Aplt. Br. at 6-7, 10. In its Summary Judgment Order, the district court specifically left this factual issue for trial because there was confusion regarding the security given for these loans. *See* R., Vol. V, doc. 117,

at 29-30.  But the district court later ruled that as a matter of Oklahoma law, ambiguities regarding collateral do not preclude enforcement of loan agreements. R., doc. 207, at 10, ¶ 1 (citing *Anderson v. Warren*, 164 P.2d 221, 223 (Okla. 1945), for the proposition that a promise to pay is distinct from a mortgage, "which is not intended to affect in the least the promise to pay, but only to provide a remedy for the failure of performance" (quotation omitted)). Appellants have not provided any argument regarding this legal conclusion, and in any event, we see no error in it.

Appellants' next identifiable issue is that in calculating their reduced request for damages at trial, CitiFinancial did not give them credit for all the payments they made or attempted to make.  *See* Aplt. Br. at 13.  Appellants cite to the district court's Summary Judgment Order, which recited a number of such payments documented by evidence submitted at the summary judgment stage, and they also claim that there are other examples not provided at that stage.  The problem with this argument is that, *at trial*, appellants presented no evidence to show that CitiFinancial's figures were wrong.  Ms. Frasure only elicited testimony that Mr. Barbone did not have the underlying documentation on which CitiFinancial based the calculation of its reduced-damages request, and the district court specifically ruled that it would not order CitiFinancial to produce any documentation.  Our review of this issue is limited to the evidence presented at trial.  *See Tele-Communications, Inc. v. Comm'r*, 104 F.3d 1229, 1233

(10th Cir. 1997) (explaining that an appellate court is not a "second-shot forum" and the parties must "give it everything they've got at the trial level") (quotations omitted); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992) (declining to consider evidence not presented to district court). Thus, it is apparent that at trial, appellants failed to rebut CitiFinancial's evidence, so we cannot say that the district court's finding with respect to the reduced amount CitiFinancial sought—$154,225.57—is clearly erroneous.[1]

Appellants next summarily state their disagreement with a number of the rulings in the district court's Summary Judgment Order. *See id.* at 13-17. We will not consider these allegations of error because appellants fail to present any reasoned argument in support of their conclusions. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

Appellants also contend that the district court should not have permitted CitiFinancial to use copies of documents to prove their case. *See* Aplt. Br. at 15. Appellants did not object to the admission of any documents at trial on the ground that they were copies. Accordingly, this issue is not preserved for our review. *See* Fed. R. Evid. 103(a)(1).

---

[1]     With their proposed amended reply brief, appellants have attached some documentary evidence in an effort to show that CitiFinancial did not credit approximately $6,200 that they paid or tried to pay. This attempt is untimely; appellants could have introduced this evidence at trial but they did not. We therefore will not consider the proffered exhibits.

Finally, Ms. Frasure believes that the amount of the award on her IIED claim was insufficient. Aplt. Br. at 16. She has not provided any reason for this belief, so we will not consider it. *See Adler*, 144 F.3d at 679.

### III. Conclusion

The judgment of the district court is AFFIRMED. Any implied motions by appellants for appointment of counsel are denied. Appellants' motion to amend their reply brief is granted to the extent appellants seek to add page nine and denied in all other respects, including their attempt to present evidence not introduced at trial. Appellants' motion for an extension of time to file a reply in support of their motion to amend is denied. Appellants' motion to dismiss the district court's judgment in favor of CitiFinancial and to remand, filed January 27, 2009, and their motion to add exhibits in support, filed January 30, 2009, are denied.

Entered for the Court


John C. Porfilio
Circuit Judge